**82 So.2d 323**

## GOVERNOR CLAIBORNE APART-MENTS, Inc.

### v.

### Joseph J. ATTALDO.

No. 41950.

May 23, 1955.

Rehearing Denied June 30, 1955.

Morphy & Freeman, A. D. Freeman, Jr., New Orleans, for appellant.

R. M. Mathews, New Orleans, for appellee.

FOURNET, Chief Justice.

The plaintiff, Governor Claiborne Apartments, Inc., claiming the defendant, Joseph

J. Attaldo, in violation of the lease contract existing between them covering barber shop space in The Claiborne Towers, New Orleans, Louisiana,[1] is using the premises for the purpose of accepting wagers on horse races, instituted this summary proceeding to have the lease cancelled and the defendant evicted. This appeal was taken by the defendant from an adverse judgment.[2]

The defendant concedes the use of the leased premises for a purpose other than the operation of a barber shop would give ground for cancellation of the contract. He not only denies its use for any other purpose, however, and particularly for race horse wagering, but contends his exceptions of prematurity and of no cause and no right of action should have been maintained inasmuch as the plaintiff neither alleged nor proved he failed to comply with the terms of the lease for ten days after notice of noncompliance was given to him, in accordance with the specific provisions of the lease, which is the law between the parties.[3]

We do not think the evidence sustains the plaintiff's claim that the defendant was operating a "hand book" with that legal certainty the law requires. However, even had the evidence established this as a fact, there is no allegation (or proof) that he persisted in using the premises for such a purpose for ten days after receipt of the letter of March 19, 1954, in which the plaintiff called the defendant's attention to such noncompliance. The latest purported "betting" testified to during the trial of this case occurred on March 13, 1954, which was prior to the date on which this notice was given, not subsequent thereto. Consequently, the plaintiff has not stated or proved a cause or a right of action.

The contention of the appellee that the provisions in Paragraph No. 19 of the contract have reference to civil breaches of the lease, and not to criminal infractions of the law, is untenable. In the first place, the defendant has not been charged with, nor prosecuted for, the operation of a "hand book" and this place, as above stated, was not proved during the trial to have

---

1. The lease covers approximately 460 square feet on the ground floor and is for a period of five years, beginning January 1, 1953, with privilege of renewal for an additional five years.

2. The motion for transfer of this case to the Court of Appeal on jurisdictional grounds, filed by the appellant, and also the appellee's motion for dismissal of the appeal in so far as it is suspensive, were denied in a decision handed down on February 14, 1955. 227 La. 39, 78 So. 2d 502.

3. Paragraph 19 of the lease contract provides: "Notwithstanding any other provisions herein contained, should Lessee at any time fail to pay the rental stipulated herein promptly when due, or fail to perform or comply with any other term, covenant or condition of this lease, and continue such failure for ten (10) days after Lessor shall have given written notice to Lessee specifying such failure * * * then * * * Lessee shall be deemed to have violated this lease and ipso facto be in default hereunder * *."

been used for such a purpose. Additionally, the lease contains no provision with respect to such a distinction between civil and criminal breaches and, in the absence of such specific stipulation, we know of no law that would warrant the cancellation of a lease between private individuals because one of them purportedly violated a criminal law.

For the reasons assigned, the judgment appealed from is annulled and set aside, the exceptions of no cause and no right of action are maintained, and the dismissal of the suit is ordered at the cost of the plaintiff.